# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01779-COA

**JULIA N. BENNETT**                                                            **APPELLANT**

**v.**

**ANDRE D. BENNETT**                                                             **APPELLEE**

DATE OF JUDGMENT:               09/12/2016
TRIAL JUDGE:                    HON. JOHN C. MCLAURIN JR.
COURT FROM WHICH APPEALED:      RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         WILLIAM P. FEATHERSTON JR.
ATTORNEY FOR APPELLEE:          TAMEIKA LADANYA BENNETT
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
DISPOSITION:                    AFFIRMED: 04/10/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., FAIR AND WESTBROOKS, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Julia Bennett appeals the Rankin County Chancery Court's judgment awarding her ex-husband, Andre Bennett, custody of their two daughters if she removed them to another state. The sole issue on appeal is whether the chancery court complied with Mississippi Code Annotated section 93-11-65(1)(a) (Rev. 2013) by declining to honor the eldest child's stated preference to live with her mother. Because the chancellor adopted the findings of the family master explaining the deviation from the child's preference, we affirm.

## FACTS

¶2.     Andre and Julia married in 1999. During their marriage, they had two daughters –

Madeline[1] (born in 2002) and Camille (born in 2006). In 2011, the couple divorced on the ground of irreconcilable differences. The final judgment of divorce ordered Andre and Julia to share joint legal and physical custody of the children, with Julia maintaining physical custody. The judgment further detailed alternating weekly custodial periods, with Andre having overnight visits every Wednesday and every other Friday and Saturday.

¶3. On July 29, 2016, Andre filed a petition to cite Julia for contempt, modify physical child custody, and other relief. He claimed that a material change in circumstances had occurred, namely Julia's decision to relocate with the children to St. Louis, Missouri. Less than two weeks later, Andre filed a petition for an emergency hearing. He requested temporary legal and physical custody of the children to continue their enrollment in Rankin County schools[2] pending a final custody determination by the court. The chancellor granted Andre's motion.

¶4. Julia immediately filed an emergency motion to dissolve the chancellor's order granting emergency relief. The court granted her motion in part, dissolving the previous award of temporary custody to Andre in favor of their continued joint legal and physical custody. However, the court maintained its decision that the children would continue attending schools in Rankin County until the scheduled hearing on custody modification.

¶5. Julia counterclaimed Andre's petition to modify custody. She requested sole physical

---

[1] The children's names have been changed to protect their identities.

[2] The children had been enrolled in the Rankin County School System in years past, but they had not yet been enrolled for the 2016-2017 school year.

custody of the minor children. She also requested that Andre receive visitation based on the move to St. Louis.

¶6. The court appointed a family master, who held the modification hearing on August 19, 2016. Andre testified that he was very active in his daughters' lives and that he did not want the custodial arrangement to change (which would be inevitable if Julia moved to St. Louis). Andre also testified that he recently bought a three-bedroom house for himself and the girls. When the girls stayed over, he helped them with their homework and cooked for them.

¶7. Julia testified that her father and boyfriend lived in St. Louis. She stated that she had been in a relationship for about one year and she planned to get married. Julia further stated that she would live with her father until she married her boyfriend. At the time of the hearing, Julia had no income. However, she stated that she had a job lined up in St. Louis beginning in September. Julia testified that, prior to the emergency order, she was in the process of enrolling the children in a St. Louis school.

¶8. The court also heard from Madeline, age fourteen at the time. She testified that if her mother moved, she wanted to go with her. When asked why, she replied that she had been with her mother her entire life and they were very close. On the other hand, Madeline stated that she was also close to her father and she would honor a court order awarding custody to her father.

¶9. Ultimately, the family master found that no material change in circumstances had

occurred *yet*. He explained that if Julia did move to St. Louis, she would create a material change in circumstances that would be adverse to the children. The family master conducted an *Albright*[3] analysis in light of Julia's possible move. After weighing the *Albright* factors, including Madeline's expression of preference, the family master determined that the evidence favored a modification of custody to Andre. The chancellor agreed. So, if Julia moved, Andre would get physical custody and Julia would have liberal visitation. Julia would also have to pay $750 a month in child support.

¶10. Julia appeals.

## STANDARD OF REVIEW

¶11. The standard of review for a child custody case is a narrow one. We will not reverse unless the trial court made findings that are manifestly wrong or clearly erroneous or applied an improper legal standard. *Smith v. Smith*, 97 So. 3d 43, 46 (¶7) (Miss. 2012) (citations omitted).

## DISCUSSION

¶12. Julia only challenges one *Albright* factor – the preference of the minor child. Mississippi Code Annotated section 93-11-65(1)(a) (Rev. 2013) provides that a child's preference may be taken into account in determining child custody:

> [I]f the court shall find that both parties are fit and proper persons to have custody of the children, and that either party is able to adequately provide for

---

[3] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss.1983) (outlining the relevant factors to be considered in child custody determinations).

the care and maintenance of the children, the chancellor may consider the preference of a child of twelve (12) years of age or older as to the parent with whom the child would prefer to live in determining what would be in the best interest and welfare of the child. The chancellor shall place on the record the reason or reasons for which the award of custody was made and explain in detail why the wishes of any child were or were not honored.

"[T]he chancellor is not bound by the election of a minor child." *Floyd v. Floyd*, 949 So. 2d 26, 30 (¶12) (Miss. 2007). However, if a chancellor declines to follow a child's election, he must place the reasons in the record. *Id*.

¶13. In his *Albright* analysis, the family master noted the following regarding the child's preference:

> The preference of the child at the age sufficient to express a preference: [Madeline] is fourteen (14). She is over the age of twelve (12). She is able to make a preference. She did make that preference for mother. This factor would favor mother in this regard. [] The stability of the home environment, I believe, favors [Andre] Bennett primarily because he's been here with the children and with mom up until recently. That is a stable environment, one in which the children are familiar with. You know, [Julia] Bennett, the testimony was you're going to live with your dad. You don't really have a place to live. You are not married yet. [There are] a lot of unknowns, a lot of question marks. I am not faulting you for it. I'm just saying that's just the way it is. All things considered, the best evidence before the [c]ourt on this half is that the material change of circumstances was adverse to the children favors a modification of custody to – to dad.

¶14. We find that the family master appropriately explained his reasons for awarding custody to Andre instead of Julia in the event that Julia relocates, even though Madeline expressed a preference to reside with her mother. It was within the chancellor's discretion to adopt the family master's recommendation. Accordingly, we affirm.

¶15. **AFFIRMED.**

5

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**